**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

CATHERINE BAKER,

   Plaintiff,

                Case No. 8:13-cv-1823-T-24-TGW

v.

KELLY SMITH, LLC d/b/a SOUTHEAST
PRENEED SERVICES, et al.,

   Defendants.
_____/

## ORDER

This cause comes before the Court on Defendant Golden Considerations, Inc.'s Motion to Dismiss. (Dkt. 4.) Plaintiff Catherine Baker opposes. (Dkt. 5.)

**I. BACKGROUND**

Plaintiff Catherine Baker, who is white, was employed as the Marketing Director for the Florida territory by Defendants Southeast Preneed Services ("Southeast") and Golden Considerations, Inc. ("Golden").[1] Southeast and Golden were either joint employers or a common enterprise with respect to Plaintiff's employment.

Defendant Kelly Smith ("Smith"), who is the owner of Southeast, tasked Plaintiff with finding potential job candidates for an open position with Defendant R. Lee Williams & Son Funeral Home ("Funeral Home"). On March 4, 2013, Smith emailed Plaintiff, instructing Plaintiff to exclude resumes from any "ethnic candidates," including "blacks, east Indians, or Europeans with heavy accents." (Dkt. 2 ¶ 18.) A few hours later, Smith sent Plaintiff an email stating, in reference to an applicant's resume, "pretty sure this guy is black." (*Id.* ¶ 19.)

---

[1] The complaint does not allege that Plaintiff is white. However, Golden's motion to dismiss asserts that Plaintiff is white (Dkt. 4 at 1), and Plaintiff's response includes no objection and states that she is not a member of a racial minority (Dkt. 5 at 3).

Plaintiff told Smith that Plaintiff "objected and refused to engage in such racially discriminatory behavior because she believed it was wrong." (*Id*. ¶ 20.) Smith "told Plaintiff to do it anyway because this was the way funeral homes worked." (*Id*. ¶ 21.) Plaintiff refused to engage in that behavior and "was forced to resign from her employment . . . on or about March 15, 2013, via email to" Smith, which stated:

> "This email serves as my formal resignation effective immediately. I do not want to be associated with your company for ethical reasons."

(*Id*. ¶ 22, Ex. D.) On the same day, Smith sent Plaintiff an email accepting the resignation. (*Id*. ¶ 23, Ex. E.)

On May 22, 2013, Plaintiff filed a two-count complaint in state court against Defendants. Count I asserts a claim for discrimination under 42 U.S.C. § 1981 against all Defendants, and Count II asserts a claim for retaliation under § 1981 against Southeast, Smith, and Golden. Golden removed the case to this Court based on federal question jurisdiction. Golden filed a motion to dismiss, arguing that: (1) Count I should be dismissed because Plaintiff's lacks standing to bring and fails to state a § 1981 discrimination claim and (2) Count II should be dismissed for failing to state a § 1981 retaliation claim.

## II.  LEGAL STANDARD

A Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction can be based on facial or factual grounds. *See Morrison v. Amway, Corp.,* 323 F.3d 920, 924 (11th Cir. 2003) (citing *Lawrence v. Dunbar*, 919 F.2d 1525, 1528-29 (11th Cir. 1990)). "Facial attacks challenge subject matter jurisdiction based on the allegations in the complaint, and the district court takes the allegations as true in deciding whether to grant the motion." *Id*. "Factual attacks challenge subject matter jurisdiction in fact, irrespective of the pleadings," in which case the court "may consider extrinsic evidence such as testimony and affidavits." *Id.*

2

In deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court is required to view the complaint in the light most favorable to the plaintiff. *See Murphy v. Federal Deposit Ins. Corp.*, 208 F.3d 959, 962 (11th Cir. 2000) (citing *Kirby v. Siegelman*, 195 F.3d 1285, 1289 (11th Cir. 1999)). The Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim. Instead, Rule 8(a)(2) requires a short and plain statement of the claim showing that the pleader is entitled to relief in order to give the defendant fair notice of what the claim is and the grounds upon which it rests. *See Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964 (2007) (citation omitted).

As such, a plaintiff is required to allege "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 1965 (citation omitted). While the Court must assume that all of the allegations in the complaint are true, dismissal is appropriate if the allegations do not "raise [the plaintiff's] right to relief above the speculative level." *Id.* (citation omitted). The standard on a 12(b)(6) motion is not whether the plaintiff will ultimately prevail in his or her theories, but whether the allegations are sufficient to allow the plaintiff to conduct discovery in an attempt to prove the allegations. *Jackam v. Hospital Corp. of Am. Mideast, Ltd.*, 800 F.2d 1577, 1579 (11th Cir. 1986).

**III.   DISCUSSION**

    **A.   <u>Count II: 42 U.S.C § 1981 Retaliation</u>**

In Count II, Plaintiff alleges that Southeast, Smith, and Golden "retaliated against Plaintiff because she opposed their discrimination in violation of 42 U.S.C. § 1981."[2] (Dkt. 2 ¶ 28.) To establish a claim of retaliation, Plaintiff must show that (1) she engaged in a statutorily

---

[2] 42 U.S.C. § 1981 states: "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other."

protected expression; (2) she suffered an adverse employment action; and (3) the adverse action was causally related to the protected expression. *Tucker v. Talladega City Schools*, 171 Fed. Appx. 289, 296 (11th Cir. 2006).

Golden argues that Count II fails to state a retaliation claim because Plaintiff fails to allege that she suffered an adverse employment action. Golden contends Plaintiff neither alleges actual termination nor constructive termination but alleges voluntarily resignation, which is insufficient to establish an adverse employment action.

In response, Plaintiff asserts that she was constructively discharged. Citing *Bryant v. Jones*, 575 F.3d 1281, 1298 (11th Cir. 2009), Plaintiff states that a constructive discharge occurs "when an employer deliberately makes an employee's working conditions intolerable and thereby forces [the employee] to quit [his or her] job." Plaintiff argues that the complaint sufficiently alleges constructive discharge by alleging that Plaintiff was "forced to resign."

Plaintiff and Golden agree that a constructive termination constitutes an adverse employment action. Although Golden argues that Plaintiff chose to resign, Plaintiff's complaint alleges that she was forced to resign. Accepting the complaint allegations as true, Plaintiff sufficiently alleges an adverse employment action in support of a retaliation claim. Golden's motion to dismiss Count II is therefore denied.

**B.** **Count I: 42 U.S.C § 1981 Discrimination**

In Count I, Plaintiff alleges that "Defendants engaged in unlawful practices and attempted to force Plaintiff to directly discriminate against job applicants based on their race in violation of" § 1981, "Defendants knew . . . of the discrimination," and "[a]s a result of Defendants' unlawful discrimination, Plaintiff has suffered" damages. (Dkt. 1 ¶¶ 25-27.)

4

Golden contends Plaintiff lacks standing to bring and fails to a state a cause of action for discrimination under § 1981 because Plaintiff did not allege that Defendants discriminated against her because of her race.[3] As support for its argument, Golden cites the elements of a § 1981 discrimination claim as set forth in *Kinnon v. Arcoub, Gopman & Associates, Inc.,* 490 F.3d 886, 891 (11th Cir. 2007), which requires that: (1) Plaintiff be a member of a racial minority, (2) Defendants intended to discriminate against Plaintiff on the basis of race; and (3) the discrimination concerned one or more of the activities in the statute. (Dkt. 4 at 3-4.)

Plaintiff does not dispute that a § 1981 race discrimination claim typically requires those elements cited by Golden. However, Plaintiff states that "[a]lthough it may appear that a plaintiff who is not a member of a minority cannot assert his/her own rights under 42 U.S.C. § 1981, the case law establishes conclusively that racial discrimination motivated by anti-black feeling but directed against whites is actionable." (Dkt. 5 at 3.) After identifying this case law, Plaintiff concludes she has standing to bring a discrimination claim because Defendants' discriminatory behavior injured Plaintiff, in that Plaintiff lost her job when Defendants forced Plaintiff to resign for opposing discrimination against non-white job applicants. (Dkt. 5 at 5.)

Plaintiff's response in opposition to Golden's motion to dismiss reveals that her discrimination claim is the same as her retaliation claim, where she alleges that Defendants "retaliated against Plaintiff for opposing the unlawful discrimination." (Dkt. 2 ¶ 29.) However, a cause of action for retaliation under § 1981—which "includes retaliation for a plaintiff's opposition to race discrimination, whether or not he personally is the victim of that race discrimination"—is "separate and distinct" from a cause of action for race discrimination under § 1981. *Tucker v. Talladega City Schools*, 171 Fed. Appx. 289, 295 (11th Cir. 2006). While cases

---

[3] Golden also argues that Plaintiff lacks standing because Plaintiff is not a member of a racial minority. The Court rejects this argument, because a white person may have standing to bring a race discrimination claim under § 1981.

may involve both a retaliation claim and a race discrimination claim, one does not require the other. *Id*. Here, Plaintiff alleges that Defendants discriminated against non-white applicants based on their race, not against Plaintiff based on her race. (Dkt. 2 ¶¶ 18-19, 25; Dkt. 5 at 3.) While Plaintiff may (and has) brought a § 1981 retaliation claim based on her opposition to that race discrimination, Plaintiff has no § 1981 claim for race discrimination claim because the alleged discrimination was not directed against her. *Cf. Tucker*, 171 Fed. Appx. at 295-96 (declining to limit all retaliation claims under § 1981 to "require that the claimed retaliation be directly due to the race of the plaintiff" because imposing that limitation would make retaliation claims nothing more than race discrimination claims).

Although the cases cited in Plaintiff's response brief involve white plaintiffs suing for injuries caused by discrimination against racial minorities, these cases do not show that Plaintiff has standing to bring a cause of action for race discrimination under § 1981. In *Sullivan v. Little Hunting Park, Inc*., 396 U.S. 229 (1969), the white plaintiff was a member of defendant Little Hunting Park, Inc., a corporation that operated a community park and playground in the subdivision where the plaintiff owned a house. The plaintiff was expelled from the corporation because he, after leasing his house to a black tenant, protested the board's refusal to approve the plaintiff's assignment of membership rights to the tenant. *Id*. at 235-36.

The United States Supreme Court held that the plaintiff had standing to sue under 42 U.S.C. § 1982, which gives every person the right to convey property as enjoyed by a white person. *Id*. at 237. However, *Sullivan* does not identify the elements of the plaintiff's § 1982 claim; the complete discussion regarding standing is as follows:

> We turn to Sullivan's [the white plaintiff] expulsion for the advocacy of Freeman's [the black tenant] cause. If that sanction, backed by a state court judgment, can be imposed, then Sullivan is punished for trying to vindicate the rights of minorities protected by § 1982. Such a sanction would give impetus to

6

> the perpetuation of racial restrictions on property. That is why we said in *Barrows v. Jackson*, 346 U.S. 249, 259, that the white owner is at times "the only effective adversary" of the unlawful restrictive covenant. Under the terms of our decision in *Barrows*, there can be no question but that Sullivan has standing to maintain this action.

*Id*. As the *Sullivan* dissent recognized, "[t]he majority simply state[d] that 'Sullivan has standing to maintain this action' under [§] 1982" but "has not explained what legal standard should determine Sullivan's rights under [§] 1982." *Id*. at 254. Thus, while *Sullivan* may show that a person who "is punished for trying to vindicate the rights of minorities" could have standing to sue under § 1981, *Sullivan* does not necessarily show that Plaintiff has standing to bring a § 1981 race discrimination claim in this case. Again, Golden's argument is not that Plaintiff lacks standing to bring any claim under § 1981; Golden disputes Plaintiff's standing to bring a § 1981 <u>discrimination</u> claim, not a <u>retaliation</u> claim.

Nor does *DeMatteis v. Eastman Kodak Co*., 511 F.2d 306 (2d Cir. 1975), establish Plaintiff's standing to bring a discrimination claim. In *DeMatteis*, a white plaintiff alleged that his former employer discharged him for selling his home to his black co-worker. The district court held that a white person had no standing to bring a § 1981 claim. Citing *Sullivan*, the Second Circuit reversed and held that the plaintiff had standing because he was punished "for his part in vindicating the [§ 1981] right of a black fellow-employee." *Id*. at 312. However, *DeMatteis* does not explain whether the plaintiff had standing because the discrimination was: (1) against the plaintiff because of his relationship or association with the black employee, or (2) against the black employee but the plaintiff nonetheless had third-party standing to sue on the black employee's behalf. This Court finds Eleventh Circuit precedent supporting not the latter but the former, as illustrated by *Faraca v. Clements*, 506 F.2d 956 (5th Cir. 1975).[4]

---

[4] Fifth Circuit decisions rendered prior to October 1, 1981 are binding on the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981).

In *Faraca*, the Fifth Circuit upheld a judgment in favor of a white plaintiff who was refused employment because the plaintiff was married to a black woman. *Faraca* established that a claim of discrimination exists based on an interracial marriage or association under § 1981. *Parr v. Woodmen of the World Life Ins. Co.*, 791 F.2d 888, 890 (11th Cir. 1986) (holding that the plaintiff had standing to sue for discrimination under § 1981 and Title VII where the defendant refused to hire the plaintiff because he was white and his wife was black). In *Parr*, the Eleventh Circuit explained that "[w]here a plaintiff claims discrimination based upon an interracial marriage or association, he alleges, by definition, that he has been discriminated against because of *his* race." *Id.* at 892 (emphasis in original). Here, Plaintiff alleges no discrimination directed against her based on an associational relationship—*i.e.,* Plaintiff does not allege that she was discriminated against because she was white and associated with a racial minority.

Finally, although *Gordon v. City of Cartersville, Georgia*, 522 F. Supp. 753 (N.D. Ga. 1981), is not cited in Plaintiff's response brief, *Gordon* will be briefly addressed because the Court's own research reveals that the majority of Plaintiff's argument regarding standing word-for-word mirrors a portion of *Gordon*'s discussion regarding standing.[5] *Compare id.* at 756-57 *with* Dkt. 5 at 3-4. In *Gordon*, the plaintiffs were developers who sued the defendants for denying permits needed for building "low-income racially integrated housing." 522 F. Supp. at 755. The defendants argued that the plaintiffs lacked standing to assert the minorities' rights. *Id*. The plaintiffs argued that *Sullivan* illustrated that a nonminority could have standing "if a relationship exists between the non-minority and the minority," such as the "relationship between a developer and prospective tenants." *Id*. In ruling that the plaintiff's had standing, *Gordon* found that "a plaintiff may assert the rights of a third party as the basis of his cause of action if there is a relationship between the third party and the plaintiff which has been adversely

---

[5] The Court directs Plaintiff to review rules governing plagiarism.

8

affected by the defendant's conduct." *Id*. at 756. *Gordon* does not support Plaintiff in this case because Plaintiff does not allege that she had an existing relationship with a non-white job applicant.

Count I fails to state a claim for discrimination because Plaintiff does not allege that she endured discrimination directed against her because of her race or her association with a racial minority. Accordingly, Plaintiff's § 1981 claim in Count I for discrimination is dismissed.

### III. CONCLUSION

Accordingly, it is ORDERED AND ADJUDGED that Defendant Golden Considerations, Inc.'s motion to dismiss (Dkt. 4) is **GRANTED IN PART AND DENIED IN PART** as follows:

A. Golden's motion to dismiss Count I for "42 U.S.C. § 1981 Discrimination" is **GRANTED**. Count I is dismissed.

B. Golden's motion to dismiss Count II under "42 U.S.C. § 1981 Retaliation" is **DENIED**.

**DONE AND ORDERED** at Tampa, Florida, this 10th day of October, 2013.

*Susan C. Bucklew*
SUSAN C. BUCKLEW
United States District Judge

Copies To: Counsel of Record and Parties